IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

LORENA L. ROOD,

        Plaintiff,

Vs.

                                       No. 12-2595-SAC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the defendant Commissioner of Social Security ("Commissioner") that denied the claimant Lorena L. Rood's ("Rood") application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") alleging the disability onset set date of February 1, 2009, based on a combination of impairments including post-traumatic stress disorder ("PTSD"), degenerative bone disease, hearing loss, tendonitis, arthritis, depression, ringing in the ears, short-term memory loss, and injuries to her back, hip, knee and shoulder (R. 74). The administrative law judge ("ALJ") filed her decision on January 25, 2012, finding that Rood was not disabled. (R. 10-25). The Appeals Council denied Rood's request for review, so the ALJ's decision stands as the Commissioner's final decision. With the administrative record (Dk. 3) and the parties' briefs on file pursuant to D. Kan. Rule 83.7.1 (Dks. 4, 9, and 10), the case is ripe for review

and decision.

## STANDARD OF REVIEW

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The court also reviews "whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Persales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted).

The court's duty to assess whether substantial evidence exists: "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g.,

that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.'" *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been made." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted).

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The first step entails

determining whether the "claimant is presently engaged in substantial gainful activity." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted). The second step requires the claimant to show he suffers from a "severe impairment," that is, any "impairment or combination of impairments which limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (internal quotation marks and regulatory citations omitted). At step three, the claimant is to show his impairment is equivalent in severity to a listed impairment. *Lax*, 489 F.3d at 1084. "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work." *Id*. Should the claimant meet his burden at step four, the Commissioner then assumes the burden at step five of showing "that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy" considering the claimant's age, education, and work experience. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks and citation omitted). Substantial evidence must support the Commissioner's showing at step five. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

**ALJ'S DECISION**

At step one, the ALJ denied Rood's claim from the alleged onset

date through January 2010 after finding that she had engaged in substantial gainful activity for that period. The ALJ also found that after January 2010 there was a continuous 12-month period in which Rood had not engaged in substantial gainful activity. At step two, the ALJ found the following impairments considered in combination to be severe: "right shoulder tendinitis with possible small rotator cuff tear s/p [post] surgery; mild degenerative join disease in the thoracic and lumbar spine; and posttraumatic stress disorder." (R. 13). The ALJ excluded from this listing the following impairments as non-severe: minimal knee osteoarthritis, infrequent migraine headaches, irritable bowel syndrome, and obesity. At step three, Rood did not attempt to prove and the ALJ did not find that the impairments, individually or together, equaled the severity of the Listing of Impairments. The ALJ also found that Rood's mental impairment did not meet the criteria of paragraphs B and C but did mildly restrict her daily living activities and create moderate difficulties with social functioning and with maintaining concentration, persistence and pace.

Before moving to steps four and five, the ALJ determined that Rood had the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) except she can perform rare overhead work at eye level or above with dominant right-handed, and it is limited to simple, routine tasks with no work with the general public." (R. 16). At step four, the

5

ALJ accepted the vocational expert's testimony that this RFC left Rood unable to perform her past relevant work. At step five, the vocational expert provided testimony from which the ALJ concluded that "the clamant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R.24). A decision of "not disabled" was filed.

**ISSUE ONE: SUBSTANTIAL EVIDENCE FOR RFC FINDING**

Under this issue, the claimant makes several challenges which the court will address under the following subheadings.

<u>GAF Scores</u>

Pointing to several GAF score references in the ALJ's decision, the claimant argues the ALJ failed to view her GAF scores as fluctuating over the extended period and erred in considering her scores to be inconsistent with her testimony and other evidence on the extent of her mental impairment. The claimant singles out her lowest GAF score of 46 and argues this to be indicative of her inability to work. This score was assessed in August of 2011 by a vocational rehabilitation specialist during a telephone checkup. (R. 624-25). Less than a month later, a Veteran's Administration ("VA") clinical psychologist as part of a therapy session scored the claimant's GAF at 63. (R. 618). The claimant cites for the period before and after August of 2011 three GAF scores between 60 and 65 and three scores between 50 and 55. The ALJ's decision to

summarize the claimant's GAF scores over the treatment period as 55 to 63 is not an erroneous description of the reliable evidence. Nor does the court find any error in the ALJ's use of the VA therapy psychologist's GAF score of 63 in weighing and evaluating an "unemployability exam" and assessment made by a different VA psychologist, Dr. Rate, one month earlier. "Because a GAF score may not relate to a claimant' s ability to work, the score, standing along without further explanation, does not establish whether or not plaintiff's impairment severely interferes with an ability to perform basic work activities." *Reisinger v. Colvin*, 2013 WL 764220 at *4 (D. Kan. 2013) (citing *Eden v. Barnhart*, 109 Fed. Appx. 311, 314 (10th Cir. Sept. 15, 2004)). The claimant does not show the ALJ's decision to have given undue or inappropriate weighting or attribution to the GAF scores.

In the same vein, the claimant argues the ALJ relied on her own "medical expertise" in discounting Dr. Rate's opinion on employability and his scoring of the claimant's GAF at 55. The ALJ appears to quote Dr. Rate's opinion that Ms. Rood was "unemployable within the competitive job market due to multiple physical and psychological ailments that are disabling." (R. 21, 638). The ALJ does not cite another VA record that finds the claimant to be "unemployable." The court consequently understands the ALJ's decision to be discussing Dr. Rate's opinion when it references the VA's finding that Ms. Rood is "unemployable." The court does not find error in the ALJ's evaluation of that

opinion. First, the ALJ correctly framed Dr. Rate's opinion on disability and employability as regarding issues reserved for the Commissioner's determination and not entitled to controlling weight or special significance. (R. 22); 20 C.F.R. § 404.1527(e). The ALJ then found that "little weight is giving (sic) to the VA's finding that the claimant is unemployable and disabled. However, the opinion has not been ignored (SSR 95-5p)." (R. 22). The ALJ also relied on other medical source evidence from a consultative examination in May of 2011 by a licensed psychologist, Jason E. Neufeld, who concluded that the claimant's psychological difficulties were not of a nature or severity as to preclude her from understanding and remembering simple instructions; sustaining concentration, persistence and pace in the work setting; socially interacting appropriately with coworkers, supervisors and the general public; and performing simple unskilled work. (R. 437). The ALJ also noted that the state agency psychological consultant, Dr. Kenneth Burstin, reviewed Ms. Rood's file and reached similar conclusions to Dr. Neufeld on her abilities. (R. 20). Finally, the ALJ cited and discussed Ms. Rood's daily function report, her testimony on being laid off from her last full-time work due to a personality conflict with her boss. (R. 15). Based on this additional evidence, the ALJ found claimant had moderate difficulties with social functioning rather than mild as opined by Dr. Burstin. (R. 15). The ALJ did not rely on her own medical expertise in rejecting Dr. Rate's opinion and arriving at the RFC finding of

8

simple and routine tasks and no work with the general public.

<u>Compliance with Social Security Ruling ("SSR") 96-8p</u>

This court has summarized the relevant law in these terms:

> [A]ccording to SSR 96–8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96–8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); *Sullivan v. Zebley*, 493 U.S. 521, 530 n. 9, 110 S.Ct. 885, 891 n .9, 107 L.Ed.2d 967 (1990); *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir.1993).
> In the case of *Martinez v. Astrue*, 422 Fed. Appx. 719, 724–725 (10th Cir. Apr. 26, 2011), the court held that the ALJ erred by failing to include all of the limitations found by Dr. LaGrand without explaining why he rejected some of the limitations, especially in light of the ALJ's conclusion that the medical source's opinion was entitled to "great weight." The ALJ simply ignored certain limitations contained in the medical report. The court held that the ALJ may have had reasons for giving great weight to some of the limitations set forth by the medical source, while rejecting other limitations. However, before rejecting some of the limitations, the ALJ was required to discuss why he did not include those limitations. An ALJ should explain why he rejected some limitations contained in a RFC assessment from a medical source while appearing to adopt other limitations contained in the assessment. *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir.2007).
> As in *Haga*, in the case before the court there is no explanation for why the ALJ adopted some of the limitations contained in the mental RFC assessment, but not others. The ALJ clearly erred by giving "significant" weight to the mental RFC assessment, but, without explanation, not including all of the limitations contained in the assessment in her RFC findings. On remand, the ALJ should either include all of the limitations in the assessment in the RFC findings, or, in the alternative, provide a legally sufficient explanation for not including these limitations in plaintiff's RFC findings.

9

*Nichols v. Colvin*, 2013 WL 5276107 at * 4 (D. Kan. 2013). Citing this SSR ruling, Ms. Rood makes several challenges to the ALJ's RFC analysis.

The claimant first argues that the ALJ did not include in the RFC a limitation found by Dr. Neufeld for "[c]ontinued psychiatric intervention appears warranted, as does ongoing participation in counseling or psychotherapy." (R. 437). The record does not show error from this omission. Dr. Neufeld's opinion did not require these sessions or appointments to occur during the workday or with such frequency as to constitute a work-related limitation. Alternatively, the ALJ found "that the claimant lacks a commitment to return to work and that attending group therapy two to three times a week does not preclude employment since the claimant has shown no evidence that this cannot be accomplished at times which would not conflict with a work schedule." (R. 22). "The fact that a claimant requires regular healthcare appointments does not necessarily indicate she cannot work on those days. *See Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000) (declining to assume that the claimant had to miss an entire day of work for her doctor's appointments)." *Brown v. Astrue*, 2008 WL 4151613, at *2 (W.D. Mo. 2008). The court finds no error.

The claimant next contends that the ALJ failed to account for Dr. Burstin's RFC finding that she "can adapt to changes in non-complex work environments." (R. 454). The claimant contrasts this language with SSR 85-15

and SSR 96-9p that require for unskilled work, the ability for dealing "with changes in a routine work setting." The court agrees with the Commissioner that the ALJ's RFC finding of "simple, routine tasks" (R. 16) adequately address and incorporates the ability to handle changes in a "routine work setting" as required by the SSRs or changes in a "non-complex environment" as opined by Dr. Burstin. The case does not present a record or circumstances for considering any arguable distinction between the SSRs and the medical source opinion over the claimant's ability to handle changes.

The claimant argues the ALJ's decision fails to address Dr. Lyman Rate's opinion that is based on an "unemployability exam" performed on behalf of the VA. (R. 634). Dr. Rate interviewed Ms. Rood and reviewed her medical records arriving at these conclusions:

> While Mrs. Rood has had productive and successful employment episodes in the past. (sic) Recently physical and psychological problems have significantly impaired her ability to obtain and maintain employment. . . .
> It is the opinion of this author that at this time Lorena Rood is unemployable within the competitive job market due to multiple physical and psychological ailments that are disabling. It is recommended that she continue to participate actively in therapies with the expectation that she will be able to return to gainful employment.

(R. 637-38). The claimant challenges that this opinion is not addressed in the ALJ's decision, that there is no explanation for why it was not adopted, and that there is no finding as to what weight was given it.

As already mentioned above, the court finds that the ALJ's decision

11

did consider, cite and quote from Dr. Rate's unemployability opinion, even if Dr. Rate is not mentioned by name. The ALJ also discussed what Ms. Rood described as her symptoms to Dr. Rate. (R. 20-21). The court reads the ALJ's decision also to have addressed Dr. Rate's opinion in part by noting that there is later evidence showing improvement in Ms. Rood's conditions and her reported symptoms as a result of therapy and medications. (R. 21). It appears that Dr. Rate's opinion is the principal evidence for the VA's conclusion of Ms. Rood being "unemployable." Consequently, the court reads the ALJ's decision as targeting Dr. Rate's opinion for the criticism that the issues of disability and employability are issues reserved for the Commissioner's determination and, thus, the opinion is not entitled to controlling weight or special significance. (R. 22); 20 C.F.R. § 404.1527(e). Consequently, the ALJ gave "little weight" to the finding and opinion, but "the opinion . . . [was not] ignored." (R. 22). The court finds no violation of SSR 96–8p.

Ms. Rood next takes issue with this finding on her social functioning ability, "[o]verall, the claimant's ability to interact appropriately in limited social situations and around familiar people would seem to indicate that she has no more than moderate difficulties in social functioning." (R. 15). Citing SSR 96-9p and SSR 85-16, she argues the ALJ's finding fails to address her ability to interact appropriately with supervisors and co-workers and, thus, is not supported by substantial evidence given that Ms. Rood's last

12

employment ended because of a personality conflict. SSR 96–9p recognizes that while "[a] substantial loss of ability to meet" a basic work-related activity like "[r]esponding appropriately to supervision, co-workers and usual work situations" will "substantially erode" an occupational base, "a less than substantial loss of ability . . . may or may not significantly erode" the occupational base. 1996 WL 374185, at *9 (1996). SSR 85-16 identifies that in considering a claimant's mental RFC a relevant factor is the "[a]bility to sustain activities, interests, and relate to others *over a period of time.*" 1985 WL 56855 at *2 (1985). Dr. Burstin's mental RFC assessment found no significant limitations with responding appropriately to supervision or co-workers. (R. 453). Dr. Neufeld likewise opined that claimant's psychological difficulties would not keep her from adequately "maintain[ing] appropriate social interactions with coworkers, supervisors, and the general public." (R. 437). The ALJ credited medical records showing issues with anger, irritability, and the circumstances of her layoff, as well as the testimony presented at the hearing about her problems with large crowds. The ALJ's order discussed the claimant's plans to work as a volunteer in fish and wildlife programs and to pursue a degree in a related area. The ALJ attends group therapy, goes shopping, "spends time with others talking and going to garage sales, and gets long with authority figures 'fair.'" (R. 15). The ALJ found that the claimant did have the "ability to interact appropriately in limited social situations and

13

around familiar people." (R. 15). There is substantial evidence to support the ALJ's decision to omit any limitation on her ability to interact appropriately with supervisors and co-workers.

The claimant maintains the ALJ ignored the requirements of SSR 96-8p by failing to consider the non-severe impairments as part of the RFC. The claimant highlights her occasional migraine headaches, her episodes of abdominal pain, chronic pain syndrome, and her osteoarthritis of the knee. The claimant summarily argues that ALJ failed to include these non-severe impairments and that substantial evidence, therefore, does not support the RFC determination. In assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe. See 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). "[T]he Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (citing *See* Social Security Ruling (SSR) 96–8p, 1996 WL 374184, at *4 (July 2, 1996)).

In making her RFC findings, the ALJ wrote that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529. The undersigned has also considered the opinion evidence in accordance with the requirements

of 20 CFR 404.1527." (R. 16). The ALJ's decision also acknowledged her duty in determining RFC to "consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545)." (R. 11). The ALJ also found "that the claimant's medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R.23).

The plaintiff has not cited medical evidence indicating that these impairments would have had more than a minimal impact on her ability to work or would result in limitations in her ability to work. The ALJ cited Dr. Thompson's testimony for the medical records showing a prior knee surgery without evidence of progressive degenerative arthritis. (R. 16). The ALJ noted the conservative treatment for her other non-severe medical impairments. The decision highlights the lack of medical evidence supporting the severity of the claimant's allegations. Additionally, the ALJ observed that the infrequent and intermittent occurrence of some conditions kept them from interfering with the plaintiff's ability to work as shown in part by the extent of her daily activities. Because the ALJ considered all symptoms and evidence when making the RFC findings for the plaintiff and considered all of plaintiff's impairments, including non-severe impairments when making her RFC findings, and because the

15

plaintiff has not cited medical evidence establishing impairments that were not included in the ALJ's RFC findings, the court finds that the ALJ did not err in her consideration of plaintiff's non-severe impairments.

Finally, the plaintiff faults the ALJ's decision for not discussing her "ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)." SSR 96-8p, 1996 WL 374184, at *7. Over the span of seven pages, the ALJ fulfills the requirements of SSR 96-8p in making the RFC assessment with a narrative discussion explaining the assessment. There is a substantive review of the medical evidence, as well as the plaintiff's allegations and evidence of daily activities. The narrative discussion considers the credibility of the plaintiff's allegations of symptoms and considers the medical source opinions on the plaintiff's impairments and capabilities. All of these findings and conclusions were done within the ALJ's acknowledged responsibility of finding Ms. Rood's "ability to do physical and mental work activities on a sustained basis despite limitations on her impairments." (R. 11). Considering the medical source evidence summarized and the credibility determinations made in the ALJ decision, the court cannot say that the ALJ's RFC finding lacks substantial evidence.

**ISSUE TWO: FAILURE TO CONSIDER THIRD PARTY TESTIMONY**

Ms. Rood's husband testified at the hearing. He testified to a

practice of making two or three checks on his wife daily because her medication has left her disoriented causing her to forget to take the medication or contributing to her falling down. (Dk. 3-4, p. 60). He described her as emotional sometimes and observed that her anxiety kept her from large crowds and some family functions. *Id*. He testified that she attempted to help with household chores but that he finishes them and that he does all the grocery shopping and errand running. As for taking his wife fishing a couple times a month, he said that she simply fishes off the back of the boat.

The claimant argues that the ALJ's decision makes no mention of her husband's testimony and, thus, fails to consider testimony that by regulation the ALJ is required to consider. The Commissioner concedes the ALJ's decision omits any specific discussion by name of the husband's testimony but argues his testimony is "largely cumulative" of the claimant's so reversal is not required, citing *Davis v. Astrue*, 237 Fed. Appx. 339, 342 (10th Cir. 2007). In reply, the claimant cites *Simpson v. Astrue*, 2012 WL 5199744 (D. Kan. Oct. 12, 2012), and distinguishes *Davis* based on the ALJ's decision here lacking any evidence to demonstrate the ALJ considered the husband's testimony.

In *Blea v. Barnhart*, 466 F.3d 903, 914 (10th Cir. 2006), the ALJ's decision failed to mention the testimony by the claimant's spouse or the fact that the spouse "did testify regarding the nature and severity of" the claimant's

17

impairments. The court held:

> In actuality, the ALJ is not required to make specific written findings of credibility only if "the written decision reflects that the ALJ considered the testimony." *Adams [v, Chater]*, 93 F.3d [712] at 715 [(10th Cir. 1996)]. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996).
> Here, the ALJ made no mention of Mrs. Blea's testimony, nor did he refer to the substance of her testimony anywhere in the written decision. Thus, it is not at all "clear that the ALJ considered [Mrs. Blea's] testimony in making his decision." *Adams*, 93 F.3d at 715. Additionally, Mrs. Blea's testimony regarding her husband's suicidal thoughts is not only uncontroverted; it serves to corroborate Dr. Padilla's psychiatric examination of Mr. Blea, where he stated that Mr. Blea has been dysthymic for years. See Aplt's App. at 243–46. Thus, the ALJ's refusal to discuss why he rejected her testimony violates our court's precedent, and requires remand for the ALJ to incorporate Mrs. Blea's testimony into his decision. "Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion[s] … [are] supported by substantial evidence." *Threet [v. Barnhart]*, 353 F.3d [1185] at 1190 [(10th Cir. 2003)]; *see also Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir.1989) ("[W]here the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.").

*Blea v. Barnhart*, 466 F.3d at 915. A year later, a Tenth Circuit panel addressed the ALJ's failure to evaluate the credibility of a spouse's testimony regarding the nature and severity of limitations, the panel held:

> While the ALJ did not explicitly discuss the testimony of Ms. Davis, we do not believe this omission is grounds for remand given the nature of Ms. Davis's testimony, which was largely cumulative of her husband's testimony. Further, where, as here, the ALJ's decision states and demonstrates that he considered all of the evidence, "our general practice, which we see no reason to depart from here, is to take [the] lower tribunal at its word." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir.2005); *see also Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th

Cir.1996) (stating that an ALJ is not required to discuss every piece of evidence so long as the record demonstrates that he considered all of the evidence).

*Davis v. Astrue*, 237 Fed. Appx. 339, 342, 2007 WL 1678094 at *3 (10th Cir. 2007).

The court does not find error here. *See Blanton v. Astrue*, 2013 WL 65447 at *4 (D. Kan. 2013). Mr. Rood's testimony is essentially cumulative of the claimant's own testimony and daily living activity statements on the nature and severity of her conditions. (R. 52-53, 55, 57, and 213). The ALJ properly evaluated the weight and credibility concerning these alleged conditions based on the medical treatment evidence and the evidence offered on the plaintiff's other daily living activities. Moreover, the hearing transcript shows the ALJ heard Mr. Rood's testimony, declined to ask him additional questions, and requested him to have his wife return to the hearing room. (R. 62). The ALJ's decision emphasizes that she made her findings and determination after "careful consideration of the entire record" (R. 12, 16) and "considering the entire evidentiary record" (R. 15). Satisfied that the ALJ's decision "'states and demonstrates that he considered all of the evidence,'" *Simpson v. Astrue*, 2012 WL 5199744 at *4 (quoting *Davis*, 237 Fed. Appx at 342), the court believes the *Davis* holding is more persuasive here. *See Smith v. Colvin*, 2014 WL 50835 (W.D. Okla. 2014).

IT IS THEREFORE ORDERED that the decision of the Commissioner

is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 15th day of January, 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge